# TILT *v.* KELSEY, COMPTROLLER OF THE STATE OF NEW YORK.

## ERROR TO THE SURROGATES' COURT OF THE COUNTY OF NEW YORK AND STATE OF NEW YORK.

No. 18.   Argued January 28, 1907.—Decided October 21, 1907.

Where judicial proceedings in one State are relied upon as a defense to an assessment by the authorities of another State a right under the Constitution of the United States is specially set up and claimed though it was not in terms stated to be such a right.

An adjudication by the probate court that a testator was a resident of the State though essential to the assumption of jurisdiction to grant letters testamentary is not necessarily conclusive on the question of domicil nor even evidence of it in a collateral proceeding, and, under the full faith and credit clause of the Federal Constitution, is not binding upon the courts of another State.

In respect to the settlement of successions to property on death the States are sovereign and may give to their courts the authority to determine finally as against all the world all questions which arise therein, subject to applicable constitutional limitations.

Where the decree of the probate court is final and bars all persons having claims against the estate, the courts of another State must, under the full faith and credit clause of the Federal Constitution, give similar force and effect to such a decree, when rendered by a court having jurisdiction to probate the will and administer the estate, and *held* that such a final decree in New Jersey was a bar in the courts of another State against the taxing authorities of the latter State attempting to enforce a claim for inheritance tax on the ground that the testator was at the time of his death domiciled therein.

182 N. Y. 557, reversed.

THIS is a writ of error from this court to the Surrogates' Court of the County and State of New York to review a judgment entered in that court in pursuance of an order of the Court of Appeals of that State. The judgment assessed a succession tax upon the personal estate of Albert Tilt, deceased, upon the ground that he was at the time of his death a resident of the State of New York. Before the assessment of the tax the estate of Tilt, who died testate, was fully administered in

the courts of New Jersey, where the will was probated. In the course of the administration all the personal property, after paying debts, taxes and charges of administration, was distributed by the executors to the beneficiaries under the will. A reversal of the judgment of the Surrogates' Court is sought for the reason that it did not give full faith and credit to the judicial proceedings of the State of New Jersey, as required by the Constitution and laws of the United States.

*Mr. William G. Wilson* for plaintiffs in error:

The legal residence of deceased at the time of his death was in New Jersey. The right, in this country, of each individual, to change his residence at will, cannot be questioned.

Change of citizenship, as distinguished from change of residence, is not always so simple a matter, and a change of residence does not in itself necessarily involve any change of citizenship. Where the intent is not clear, it has to be inferred from the circumstances surrounding the act. But when the intent is clear, acts in furtherance of it should be interpreted in the light of the known intent. *Dupuy* v. *Wurtz*, 53 N. Y. 556; *Thorndike* v. *Boston*, 1 Met. 242.

The right which every individual has to change his residence at will could not be denied or restricted by reason of the fact that a party already possessed two "homes," one in New York City, and one in Mount Arlington, New Jersey, and occupied each, with his family, for about one-half of each year. This is one of the cases where, in the language of Chief Justice Shaw, "very slight circumstances must often decide the question." Story on Conflict of Laws, § 47; *Somerville* v. *Somerville*, 5 Vesey, 750; *Thayer* v. *Boston*, 124 Massachusetts, 132.

The probate of the will in New Jersey is conclusive upon the question of his residence for purposes of administration and tax under the full faith and credit clause of the Constitution.

To no proceedings does this provision apply with greater force than to those which involve the administration of the

estates of decedents in which the State acts in the exercise of its sovereignty. It has absolute control, except for the limitations imposed by the Federal Constitution which recognize and enforce the sovereignty of the State within those limitations, in the very provision above quoted. See *Plant* v. *Harrison*, 36 Misc. (N. Y.) 649.

The decree of the surrogate of Morris County, New Jersey, admitting the will of Albert Tilt to probate as the will of a resident of that county, is conclusive here if it is conclusive in New Jersey. If the probate is conclusive in New Jersey the question is not an open one. This is a question not answered by referring to general principles of law, by determining what at common law was the significance and effect of a judgment, but can be answered only by an examination of the decisions of the courts of New Jersey. *Hancock National Bank* v. *Farnum*, 176 U. S. 643.

New Jersey is not, as Connecticut is, an exception to the general rule that the record of probate should be collaterally invulnerable. In *Matter of Caursen's Will*, 3 Green's Ch. 406; *Straub's case*, 49 N. J. Eq. 264; *Quidort's case*, 3 C. E. Green, 472; *Ryno's Exr.* v. *Ryno's Admr.*, 12 C. E. Green, 522.

*Mr. George M. Judd*, for defendant in error, submitted:

The decree of a probate court is in the nature of a proceeding *in rem*, and therefore any ground or fact upon which that decree professes to be founded can be inquired into in a proceeding in another State, brought by a person not a party to the probate proceedings. *Life Ins. Co.* v. *Tisdale*, 91 U. S. 238.

The decree of the Surrogate's Court in New Jersey, granting letters testamentary, is conclusive only upon the point adjudicated—whether the parties named receive letters testamentary. That was the *res*, and upon that only has there been an adjudication. Residence was not the *res* and it was not the point adjudicated; therefore said decree is not conclusive as to residence in a distinct and separate proceeding brought by the Comptroller of the State of New York to fix a transfer tax

alleged to be due the State of New York. *Brigham* v. *Fayerweather,* 140 Massachusetts, 411.

The probate proceeding in New Jersey was only formal, the probate of the will was not opposed; there was not a full and fair investigation of the facts; the state comptroller was not a party in the sense that he was entitled to be heard, or to take an appeal, and unless he had that right, he was not concluded by the adjudication of facts upon which the decree is grounded. 3 Wigmore on Evidence, § 1347, p. 1636.

Leaving out of consideration the *ex parte* nature of the probate proceedings, in view of the fact that by § 15 of the statutes of New Jersey, residence of the decedent in the county is made one of the jurisdictional facts upon which the probate court of that county bases its decree admitting the will to probate, and in view of the further fact that an exemplified copy of the decree of that probate court has been offered in evidence by the appellant's claiming a benefit under it, it is a general rule of law, applicable to the circumstances of this case, that this court is not precluded from inquiring into the question of residence.

The fact that the record of the probate proceedings in New Jersey recites the jurisdictional fact of residence can make no difference. General Statutes of New Jersey, published by authority of the legislature under acts of April 4, 1894, and March 20, 1895, Chapter 234 of Laws of 1898 (fols. 148–150). See also *Hard* v. *Shipman,* 6 Barb. 623; *Bolton* v. *Schriever,* 135 N. Y. 73; *Matter of Law,* 56 App. Div. 454; *Ferguson* v. *Crawford,* 70 N. Y. 253; *Thompson* v. *Whitman,* 18 Wall. 457; *Thorman* v. *Frame,* 176 U. S. 350; *Plant* v. *Harrison,* 36 Misc. Rep. 649, cited by plaintiffs in error, distinguished.

MR. JUSTICE MOODY, after making the foregoing statement, delivered the opinion of the court.

In the disposition of this case we are somewhat embarrassed by our ignorance of the reasons which controlled the decision of the highest court of the State. The opinion of the surro-

gate was very brief. His judgment was affirmed upon appeal successively by the Supreme Court and the Court of Appeals —in each court without an opinion and with two judges dissenting. The record shows the following facts: Albert Tilt was engaged in business as a silk manufacturer in Paterson, New Jersey, until the time of his death. Until 1888 he was a resident and citizen of Paterson. In that year he removed to New York City, became a resident and citizen of New York, and remained such until some time in the year 1899. He died in New York on May 2, 1900. His residence and citizenship at the time of his death was in dispute. For many years he had owned a house in New York City, where he lived during the greater part of the year, and another house in Roxbury, New Jersey, where he lived during the summer and early autumn. It is contended by the executors of his will, the plaintiffs in error, that in the last year of his life he changed his domicil from New York City to Roxbury and that at the time of his death he was domiciled in New Jersey. On the other hand, it is contended by the Comptroller of New York, the defendant in error, that his domicil continued until his death to be in New York. Upon this question the evidence was conflicting.

After the death of Mr. Tilt, his will was admitted to probate by the surrogate of Morris County, New Jersey, who by law had jurisdiction to do this if the testator resided in the county at the time of his death. The petition for probate described the testator as "late of the township of, Roxbury, in said county," and the letters testamentary granted on May 23, 1900, by the surrogate described him as "late of the county of Morris, deceased." An order was made fixing a time within which creditors must prove claims against the estate. On the expiration of this time a further order was made, that all creditors who had neglected to bring in their claims and demands should "be forever barred from their action therefor against the executors of said deceased." Succession taxes, imposed by the law of New Jersey and the law of the United

States, and all debts, were paid. The executors presented their
accounts to the Orphans' Court of the county, and that court,
acting within its jurisdiction, on June 20, 1901, allowed the
accounts and directed the distribution of the estate, according
to the terms of the will. The executors made the distribution
in conformity with the court's order, thereby parting with all
the property of the testator which had been in their hands.
After the distribution had been accomplished the State of
New York for the first time made known its claim for a trans-
fer tax. The comptroller of the State filed his petition with
the surrogate of the county of New York. In response to this
petition, on August 16, 1901, Robert Mazet was appointed by
the surrogate as appraiser to fix the fair market value of the
property of Albert Tilt, deceased. This was done with the
view of ascertaining the amount of a transfer tax due under
a section of a statute providing for such a tax "when the trans-
fer is by will or by the intestate laws of this State from any
person dying seized and possessed of the property while a
resident of the State." On March 6, 1903, Mazet filed his
report in the Surrogates' Court. The material part of this
report was: first, that the net personal property of the de-
ceased "subject to tax herein" was at the time of his death of
the fair market value of $1,056,951.22; second, that Tilt was
a resident of New York City at the time of his death; third,
that he left a will which had been "duly admitted to probate
in the Surrogate's Court of the County of Morris, State of
New Jersey;" fourth, after stating the disposition of his prop-
erty made by the testator by this will, the report appraised
the estate "subject to tax herein" at its fair market value at
the amount already stated. On June 15, 1903, the surrogate
entered an order adopting the value of the property reported
by the appraiser and assessing the amount of the transfer tax
specifically on each bequest contained in the will. The total
tax amounted to about thirteen thousand dollars. On Au-
gust 10, 1903, a paper, entitled "Appeal to the Surrogate,"
was filed by the executors. This paper gave notice of an ap-

peal to the surrogate from the appraisement, assessment, and determination of the transfer tax, and from the surrogate's own order of June 15. The only ground of appeal which need be stated here is the fifth, which alleged "that the right to assess or impose a tax under the laws of the State of New York upon the transfer of the property of the testator, if there ever was any such right, was barred before the commencement of this proceeding, by a decree of the Orphans' Court of Morris County, New Jersey, a court of competent jurisdiction, made on the twenty-fifth day of February, 1901, barring all claims against the said testator or his estate which had not been presented and proved to said executors, pursuant to public notice heretofore given and published, as prescribed by the laws of the State of New Jersey; and by the further decree of the same court, made on the twentieth day of June, 1901, directing the distribution of the estate of said testator in the hands of said executors, according to the terms of the will of the said Albert Tilt, deceased; in obedience to which the said executors, without any notice or knowledge of any claim or liability for the payment of a transfer tax under the laws of the State of New York, distributed the said estate, so that there was not at the time of the commencement of this proceeding, and is not now, any property of the said estate in the hands of said executors." It was then agreed by counsel that the surrogate should determine on affidavits whether or not Albert Tilt was a resident of New York at the time of his death. Pending the consideration of this question the executor requested in writing certain findings of facts and conclusions of law, of which only two need be stated here. They are as follows: (2) "Under the Constitution of the United States full faith and credit must be given to the probate of said will and codicil of said Albert Tilt in the State of New Jersey, and to the accounting and distribution made by his executors under the decree of the Orphans' Court of Morris County in said State, of the estate of said Albert Tilt as a resident of New Jersey at the time of his death." (3) "None of the personal

estate of said Albert Tilt is subject to the payment of a transfer tax under the laws of the State of New York, excepting only such of his personal estate as was actually within the State of New York at the time of his death." These requests were refused by the surrogate, who, in a short opinion, found as a fact that Tilt was a resident of New York at the time of his death, and ruled that his personal estate, wherever situated, was subject to the payment of a transfer tax under the laws of New York. An order was accordingly entered affirming the order of June 15. Thereupon the executors filed exceptions, the last two of which were as follows: (20) "To the refusal of the said Surrogate to find as a conclusion of law that under the Constitution of the United States full faith and credit must be given to the probate of said will and codicil of said Albert Tilt in the State of New Jersey, and to the accounting and distribution made by his executors under the decree of the Orphans' Court of Morris County in said State, of the estate of said Albert Tilt as a resident of New Jersey at the time of his death. (21) To the refusal of the said Surrogate to find as a conclusion of law that none of the personal estate of said Albert Tilt is subject to the payment of a transfer tax under the laws of the State of New York, excepting only such of his personal estate as was actually within the State of New York at the time of his death." An appeal was then taken, and, as already stated, the action of the surrogate was affirmed by the Supreme Court and the Court of Appeals. The proceedings before the surrogate are somewhat fully set forth, because it is contended that no Federal question was properly and seasonably raised in the state courts.. We think, however, that a right under the Constitution of the United States was specially set up and claimed by the executors, as required by § 709 of the Revised Statutes, and denied by the highest court of the State, and that therefore we have authority to reëxamine the decision. It appears clearly in the paper entitled "Appeal to the Surrogate" that the executors relied upon the judicial proceedings in New Jersey as a defense to the assessment of

the New York tax. They "specially set. up and claimed" a right under those proceedings, though it was not in terms stated to be a right claimed under the Constitution. This, in the case of a judgment of the court of another State, has been held to be a sufficient compliance with the statute. *Great Western Telegraph Co.* v. *Purdy,* 162 U. S. 329; *Bell* v. *Bell,* 181 U. S. 175; *Andrews* v. *Andrews,* 188 U. S. 14, and see the remark of the Chief Justice in *Mutual Life Insurance Company* v. *McGrew,* 188 U. S. 291, 311. Moreover, while the surrogate still had the appeal under consideration and undecided, requests in writing were made to him which clearly and specifically set up the claim that the full faith and credit due, under the Constitution, to the judicial proceedings of the State of New Jersey forbade the assessment of the tax. These requests were entertained and the claim denied by the surrogate and an exception taken. Upon the record thus made an appeal was taken, and in the disposition of the appeal the Federal question was necessarily passed upon by the highest court of the State, whose decision, therefore, we may reëxamine.

That reëxamination, however, must be confined to the single question whether by the assessment of the tax full faith and credit has been denied to the judicial proceeding of the State of New Jersey in violation of Article IV, section 1, of the Constitution. In the consideration of this question, the first inquiry which presents itself is whether the adjudication of the New Jersey court, that Tilt was at the time of his death a resident of New Jersey, was conclusive upon the State of New York, a stranger to the proceedings. If it was that is the end of the case, because then New York could not take the first step necessary to bring the estate within the provision of the tax law of that State. But upon principle and authority that adjudication, though essential to the assumption of jurisdiction to grant letters testamentary, was neither conclusive on the question of domicil, nor even evidence of it in a collateral proceeding. *Thormann* v. *Frame,* 176 U. S. 350;

*Overby* v. *Gordon,* 177 U. S. 214; *Dallinger* v. *Richardson,* 176 Massachusetts, 77; and see *Mutual Benefit Life Ins. Co.* v. *Tisdale,* 91 U. S. 238; *De Mora* v. *Concha,* 29 Ch. Div. 268; aff'd 11 App. Cases, 541; *Brigham* v. *Fayerweather,* 140 Massachusetts, 411. The difference in the effect of a judgment on the *res* before the court and of the adjudication of the facts on which the judgment is based is pointed out by Mr. Justice Holmes in the last case. In an opinion, holding that a decree of a probate court admitting a will to probate was not, on an issue between parties one of whom was not a party to the probate proceedings, competent evidence of the testator's mental capacity, he said: "A judgment *in rem* is an act of the sovereign power; and, as such, its effects cannot be disputed, at least within the jurisdiction. If a competent court declares a vessel forfeited, or orders it sold free of all claims, or divorces a couple, or establishes a will, . . . a paramount title is passed, the couple is divorced, the will is established as against all the world, whether parties or not, because the sovereign has said that it shall be so. But the same is true when the judgment is that A recover a debt of B. The public force is pledged to collect the debt from B, and no one within the jurisdiction can oppose it. And it does not follow in the former case any more than in the latter, nor is it true, that the judgment, because conclusive on all the world in what we may call its legislative effect, is equally conclusive upon all as an adjudication of the facts upon which it is grounded. On the contrary, those judgments, such as sentences of prize courts, to which the greatest effect has been given in collateral proceedings, are said to be conclusive evidence of the facts upon which they proceed only against parties who were entitled to be heard before they were rendered. We may lay on one side, then, any argument based on the misleading expression that all the world are parties to a proceeding *in rem.* This does not mean that all the world are entitled to be heard, and as strangers in interest are not entitled to be heard, there is no reason why they should be bound by the

findings of fact, although bound to admit the title or status which the judgment establishes." We think that this quotation expresses the correct rule and that it is sustained by the decisions of this court. Applying it here, it follows that the full faith and credit due to the proceedings of the New Jersey court do not require that the courts of New York shall be bound by its adjudication on the question of domicil. On the contrary, it is open to the courts of any State in the trial of a collateral issue to determine upon the evidence produced the true domicil of the deceased.

But assuming that the New York court had the right to determine, and determined rightly, the domicil of the deceased, what then? The grievance here is not the finding that Mr. Tilt died a resident of New York. It is the assessment, based upon that finding, of a transfer tax upon the legacies contained in his will. The real question in the case is whether the assessment of that tax by the State of New York is consistent with the full faith and credit required by the Constitution to be given to the judicial proceedings of another State. After the will had been allowed and letters testamentary had been issued by the New Jersey surrogate, the executors named in the will took possession of all the personal property of the testator (the real property not being concerned in this litigation) and began to administer it in accordance with the terms of the will and under the direction of the court. That property, appraised at about one million dollars, consisted of bank deposits almost entirely in New Jersey banks, life insurance policies, a few small mortgages, notes and accounts receivable, furniture, horses and carriages, and (constituting more than eight-tenths of the whole of the personal estate) stock in New Jersey corporations. A limit of time was fixed for the presentation of claims against the estate, at the expiration of which it was decreed that all creditors who had neglected to bring in their demands should be barred from any action thereon against the executors. What was then done appears in an affidavit of a witness, which was agreed by counsel in

the hearing before the New York surrogate to show the facts. The affidavit is in part as follows: "Said executors accounted as such in the Orphans' Court of said Morris County, New Jersey, which court had jurisdiction under the laws of New Jersey to entertain such accounting and to direct final distribution of the estate of said testator thereon, and such proceedings were thereupon had that on June 20, 1901, a decree was made in said Orphans' Court by the judge presiding therein, finally settling and allowing the accounts of said executors, and directing the distribution of the balance of the estate of said Albert Tilt remaining in the hands of said executors according to the terms of said will. Thereupon and prior to August, 1901, such distribution was made by said executors pursuant to the terms of said will, in conformity with the direction of said decree, and thereafter there remained in the hands of said executors no money or personal property whatsoever of the estate of said Albert Tilt."

Thus executors appointed by a court having upon the face of the record authority to make the appointment, had accounted for the property which had come into their hands to the court having jurisdiction under the laws of the State to pass on the accounts, and, without knowledge of any claim by the State of New York, had, by the direction of the court acting within its jurisdiction, paid out the whole estate to those who were entitled to it by the will. All that was done by the executors, and all that was received by the beneficiaries in the disposition of the estate, was done and received by orders of court, duly entered in the course of judicial proceedings. For the purpose of enabling the executors to distribute the estate with safety to themselves, in accordance with a common practice in the settlement of the estate of deceased persons, and under authority conferred by the laws of the State, the court, prior to the distribution, had decreed that all those who had neglected to bring in their claims should be "forever barred from their action therefor against the executors of the deceased." Upon these facts does the assessment of this

transfer tax by the State of New York, by whose laws the tax thus assessed is made a lien on the property transferred and a personal obligation of the transferee and the executors (§ 222, ch. 908, Laws of 1896), give the full faith and credit to which these judicial proceedings are entitled? The answer to this question depends upon the nature of the proceedings and their effect upon the rights of those persons who were not parties or privies to them. If they are binding upon such persons the State of New York may not levy a tax upon property which has been transferred free from the burden and impose a personal liability on the executors who have been declared forever exempt from all demands against the estate. The enforcement of the claim for such a tax against the property, against the distributees of the property, and against those who have distributed it, under the direction of the court, and with its assurance that no claims against them shall longer exist, is plainly inconsistent with the judicial proceedings by which the property has been administered. Is then the nature of the proceedings such that they are binding not only upon those who were parties or privies to them, but upon all others as well?

When the owners of property die, that property, under the conditions and restrictions of the law applicable, is transmitted to their successors named by their wills or by the laws regulating inheritance in cases of intestacy. For a suitable time it is essential that the property should remain under the control of the State, until all just charges against it can be discovered and paid, and those entitled to it as new owners can be ascertained. It is in the public interest that the property should come under the control of the new owners, after such delays only as will afford opportunity for investigation and hearing to guard against mistake, injustice, or fraud. It is the duty of the sovereign to provide a tribunal, under whose direction the just demands against the estate may be determined and paid, the succession decreed, and the estate devolved to those who are found to be entitled to it. Sometimes this duty is

performed by conferring jurisdiction upon a single court and sometimes by dividing the jurisdiction among two or three courts. The courts may be termed ecclesiastical, probate, orphans', surrogate or equity courts. The jurisdiction may be exercised exclusively in one, or divided among two or more, as the sovereign shall determine. But somewhere the power must exist to decide finally as against the world all questions which arise in the settlement of the succession. Mistakes may occur and sometimes do occur, but it is better that they should be endured than that, in a vain search for infallibility, questions shall remain open indefinitely. As was said by Mr. Justice Bradley, speaking on this subject in *Broderick's Will*, 21 Wall. 503, p. 519: "The world must move on, and those who claim an interest in persons and things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings *in rem*." It is therefore within the power of the sovereign to give to its courts the authority, while settling the succession of estates in their possession through their officers, the executors or administrators, to determine finally as against the world all questions which arise therein. *Grignon* v. *Astor*, 2 How. 319, per Baldwin, J., p. 338; *Beauregard* v. *New Orleans*, 18 How. 497; *Foulke* v. *Zimmerman*, 14 Wall. 113; *Board of Public Works* v. *Columbia College*, 17 Wall. 521; *Broderick's Will*, 21 Wall. 503; *Simmons* v. *Saul*, 138 U. S. 439; *Byers* v. *McAuley*, 149 U. S. 608; *Goodrich* v. *Ferris*, 145 Fed. Rep. 844; *Loring* v. *Steineman*, 1 Met. (Mass.) 204; *Kellogg* v. *Johnson*, 38 Connecticut, 269; *State* v. *Blake*, 69 Connecticut, 64; *Exton* v. *Zule*, 14 N. J. Eq. 501; *Search* v. *Search*, 27 N. J. Eq. 137; *Harlow* v. *Harlow*, 65 Maine, 448; *Ladd* v. *Weiskoff*, 62 Minnesota, 29.

In respect to the settlement of the successions to property on death the States of the Union are sovereign and may give to their judicial proceedings such conclusive effect, subject to the requirements of due process of law and to any other constitutional limitation which may be applicable.

But though a State may attach to the judicial proceedings of the courts, through which the devolution of the estates of deceased persons is accomplished, the conclusive effect which has been described, it may not choose to do so, or may choose to do so only in respect of part of the adjudications made in the course of the settlement of the succession. It may, for instance, choose to regard the probate of a will or the grant of letters of administration as conclusive on all, and on the other hand to regard an order of distribution as open to attack in a collateral proceeding by those who were not parties to it. The extent to which such proceedings shall be held conclusive is a matter to be determined by each State according to its own views of public policy. The variations in practice in the different States are considerable and no good purpose would be served by considering them. It is enough to instance that in the States of Connecticut and Massachusetts, according to the cases just cited, a decree of distribution is binding upon all, while in the State of New York it appears not to be binding on one who was not a party to it. *In ré Killan,* 172 N. Y. 547.

When, therefore, we come to consider what faith and credit must be given to these judicial proceedings of New Jersey, we must first ascertain what effect that State attaches to them. The statute enacted to carry into effect the constitutional provision provided that they should have in any court within the United States such faith and credit "as they have by law and usage in the courts of the States from which they are taken." Act of May 26, 1790, now sec. 905, Rev. Stat. They can have no greater or less or other effect in other courts than in those of their own State. *Cheever* v. *Wilson,* 9 Wall. 108; *Board of Public Works* v. *Columbia College,* 17 Wall. 521; *Robertson* v. *Pickrell,* 109 U. S. 608; *Hancock National Bank* v. *Farnum,* 176 U. S. 640. In ascertaining, on a writ of error to a state court, what credit is given to these judicial proceedings by the laws and usages of the State of New Jersey, we are limited to the evidence on that subject before the court whose judgment we are reviewing. *Hanley* v. *Donoghue,* 116 U. S. 1;

*Chicago & Alton Railroad* v. *Wiggins Ferry Co.*, 119 U. S. 615,
622. The only evidence upon this point was in an affidavit
of an attorney and counsellor at law of that State. The evi-
dence is meagre and not entirely satisfactory and conclusive.
It was, however, uncontradicted. It tended to show that the
surrogate had jurisdiction to probate the will and issue letters
testamentary and that the probate and issue of letters could
not be impeached in a collateral proceeding; that the surrogate
had "under the laws of New Jersey full and competent juris-
diction" to make the order limiting the time for creditors of
the estate to bring in their demands, and the subsequent order
that all who had neglected to do so "should be forever barred
from their action therefor against the executors of said de-
ceased;" that the acts of the surrogate cannot be impeached
collaterally, and that the Orphans' Court had jurisdiction
under the laws of New Jersey "to direct final distribution of
the estate of said testator," and it cited four cases from the
New Jersey reports, *Coursen's Will*, 3 Green's Ch. 408, *Quidort's
Adm'r* v. *Pergeaux*, 18 N. J. Eq. 472, *Ryno's Ex'r* v. *Ryno's
Adm'r*, 27 N. J. Eq. 522, and *Straub's case*, 49 N. J. Eq. 264. In
relying upon evidence of this kind we are quite aware that we
may not ascertain with the precision which might be desired the
credit which the State of New Jersey attaches to these judicial
proceedings. But it is all that we can have. We think that
we may safely infer from it that the order of the surrogate
barring all creditors who had failed to bring in the demand
from any further claim against the executors was binding upon
all. It was an order which he had "full and competent author-
ity to make," and it was one of the acts which could not be
impeached collaterally. We think also that the jurisdiction
to direct a final distribution means a distribution which shall
be final, so far at least as any person having a demand against
the estate is concerned. If we have discerned correctly the
effect which New Jersey gives to these judicial proceedings, it
is obvious that the assessment of this tax denies them full faith
and credit in two respects: First, in seeking a part of an estate

which has been finally distributed to those who were entitled
to it under the will; and, second, in fixing a personal responsi-
bility for the tax upon the executors who had been conclusively
exonerated from such a liability.

Up to this point it has been assumed that the New Jersey
court had jurisdiction to probate the will and administer the
estate, and what has been said upon the effect of the judicial
proceedings has been based upon that assumption.   When,
however, full faith and credit is demanded for a judgment
in the courts of other States, an inquiry into the jurisdiction
is always permitted, and if it be shown that the proceedings
relied upon were without the jurisdiction of the court, they need
not be respected.   *Thompson* v. *Whitman,* 18 Wall. 457; *Thor-
mann* v. *Frame,* 176 U. S. 350, and cases cited.

The defendant in error, acting upon this well-settled rule,
might have attacked the jurisdiction of the New Jersey courts,
and thus brought forward for consideration many important
questions which, in the view we take of the case, need not even
be stated.   But there was no attempt, except in argument
here, to deny the right of the New Jersey court to act upon the
paper writing purporting to dispose of the estate of Tilt, and
by admitting it to probate to convert it into an operative will.
It is true that, as a basis of assessing transfer taxes, it was
proved that Tilt was a resident of New York at the time of his
death, a fact which would be relevant to the question of juris-
diction.   But that fact was not proved or used for the purpose
of invalidating the proceedings taken in probating the will and
administering the estate.   On the contrary, the taxes were
based upon the provisions of the instrument, which derived
all its authenticity as a will and all its capacity to transmit
property from the judicial proceedings in New Jersey.   It
appears conclusively from the action taken in the New York
Surrogates' Court that there was no attempt to declare the New
Jersey proceedings void because they were taken without
jurisdiction.   In the appraiser's report it is said that the de-
ceased had left a will "which was duly admitted to probate in

the Surrogate's Court of the county of Morris, State of New Jersey, and that letters testamentary were issued by said Surrogate Court." The specific legacies and the disposition of the residue of the estate were then stated. The Surrogate, in assessing the taxes, assessed them specifically on the beneficiaries, giving their respective names and the values of the property they respectively took under the will. Two life estates and several remainders, created by the will, were valued appropriately and the taxes assessed accordingly. All this is utterly inconsistent with an attack upon the jurisdiction, and we need not consider whether it could have been made with success.

It is quite obvious that what was done here was the assessment by one State of taxes upon transfers of personal property, taking effect under the laws of another State, entirely regardless of the *situs* of the property transferred. This suggests grave constitutional questions, which we cannot consider because they were not properly and seasonably raised in the court below.

For the foregoing reasons we think that the judgment below denied to the New Jersey proceedings the full faith and credit to which they were entitled by the Constitution and laws of the United States, and accordingly it is

*Reversed.*

MR. JUSTICE HARLAN dissents.