## MANSON *v.* WILLIAMS, TRUSTEE IN BANKRUPTCY OF HUDSON CLOTHING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 169. Argued April 20, 21, 1909.—Decided May 3, 1909.

Where both the District Court and Circuit Court of Appeals have found as a fact that a partnership existed and owned the stock, while this court may, it will not, as a general rule, disturb the findings.

While an adjudication putting two or more persons into bankruptcy as partners is, for the purpose of administering the property, good as against all the world, it does not establish the existence of the partnership except as against parties entitled to be heard, and that question is not *res judicata* as against one who had denied being a partner and had not been heard.

It will be presumed that one who furnished capital for business expects gain therefrom, and if he is not a creditor receiving interest, his gain must come from profits as a partner.

In this case, there being evidence to support the finding of the two lower courts that a partnership existed by an implied understanding between two brothers pending the formation of a corporation, this court affirms the judgment notwithstanding that it might not necessarily have reached the same conclusion had the case been here tried in the first instance.

153 Fed. Rep. 525, affirmed.

THE facts are stated in the opinion.

*Mr. John W. Manson*, with whom *Mr. Harry R. Coolidge* was on the brief, for appellants.

Mr. *John S. Williams*, with whom *Mr. Albert S. Woodman* was on the brief, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition by the appellee, the trustee in bankruptcy of the Hudson Clothing Company, that the appellants, the trustees in bankruptcy of Henry Hudson, pay over to the appellee the proceeds of a stock of goods alleged to have belonged to the company. The referee in bankruptcy made an order as prayed, which was sustained on the principal matter by the District Court, 148 Fed. Rep. 305; and the decree of that court was affirmed by the Circuit Court of Appeals. 153 Fed. Rep. 525; *S. C.*, 82 C. C. A. 475. A further appeal has been taken to this court. *Hewit* v. *Berlin Machine Works*, 194 U. S. 296.

The facts to be gathered from the opinion of the Circuit Court of Appeals and admitted are these. Henry Hudson became the owner of a stock of goods and desired to sell them. He also wished to help his brother James, and therefore put him in to do the selling. In the beginning he contemplated forming a corporation, turning the goods over to it and taking most of the stock as security, but letting James take the profits. This plan, however, was allowed to slumber, and the business was carried on by James for over two years. From an early moment James adopted the name of Hudson Clothing Company, using it as a sign, and in advertisements and on billheads. This was known to Henry, and when he advanced money to the business, as he did, he charged it on his books to the company. The bank account was kept with James, the bank book having the name Hudson Clothing Company above. Some of the exhibits in evidence have, besides the name of the company, the words "Henry Hudson, Pres.," and "James Hudson, Treas. and Mgr." There was no act of transfer on the part of Henry, but when he took goods from the shop he paid for them in the same way as if he had bought

them elsewhere. Both the District Court and the Circuit Court of Appeals have found as a fact that the brothers were partners, and that the goods belonged to the firm. In such cases this court as a rule will not disturb the findings, but it has done so in some instances, *Darlington* v. *Turner*, 202 U. S. 195, 220, and in the case at bar the appellants contend that there really was no evidence to justify the result reached.

The appellee says that the question is concluded by the adjudication putting the company into bankruptcy, that being an adjudication against the two brothers. On the other hand, the record shows that the trustees of Henry, although they had filed a denial and answer, were not heard on that question. The principle of law is plain. The adjudication put the two brothers into bankruptcy for the purpose of administering whatever property there might be, as against all the world. But it did not establish the facts upon which it was founded, no matter how necessary the connection, except as against parties entitled to be heard. *Tilt* v. *Kelsey*, 207 U. S. 43, 52. If the trustees of Henry were not entitled to be heard, it is because they had no concern with whether the alleged firm was wound up in bankruptcy or not, but only with the facts upon which creditors sought to wind it up, that is to say, the existence of the partnership and the title to the partnership assets, and these facts would remain open to dispute. As the trustees of Henry were not heard, it would come with bad grace from one who might have urged the foregoing considerations, to argue here that they are bound to admit anything except that Henry and his brother are in bankruptcy as partners. Furthermore, we gather from the opinion of the District Judge that all parties requested him to examine the evidence, and that the defense of *res judicata* really was waived. But as the partnership might have been a partnership in profits only, leaving the title to the capital in Henry alone, the adjudication, even if it established that there had been a partnership, could not conclude anything as to the title to the assets, the matter with which we now are concerned.

We come back then to the question whether the findings of the two courts below are so clearly unwarranted as to call upon us to reconsider the evidence and to reverse the decree. In the first place we may lay on one side the fact that the parties began with the intent to form a corporation. They did not understand that they were acting as a corporation, nor did their dealings so far purport to be dealings of a corporation as to preclude the finding that was made. Now suppose that we take nothing more than the facts that one man furnishes capital and another his personal service in disposing of it, and that the latter is admitted to be interested in the profits if any, and at the same time not to be a debtor of the former. We have a right to infer that if a man furnishes capital he expects some gain from it. But as, in the case supposed, he is not a creditor and will not get interest, his gain must come from profits of the business. Some kind of joint interest therefore may be inferred, and the Circuit Court of Appeals would have had some warrant from these facts alone for concluding that Henry would have had a right to share the profits equally with James.

We are aware that there is evidence looking the other way, but that is not the question. On the other hand, the inference is strengthened by the facts that we have mentioned. Henry Hudson knew the name under which the business was done, and is likely to have known that his name sometimes was exhibited as president. It is true that the terms suggest a corporation, but under our usages not necessarily, and he at least knew that there was no corporation. He paid for the goods he bought, as if other interests were concerned. We mention these facts as admissions by conduct. Apart from the findings of the two courts it is unlikely that if great profits had been realized he would not have demanded a share. As to James, not only is it admitted that he was interested in profits, but there is some evidence that he contributed to the assets, as we shall explain.

If we take it as established that both brothers were interested

in the business, it is not a difficult step to infer that the capital of the business was firm capital. Whether capital shall be attributed to the firm or to a partner is a matter that often escapes the attention of the members. For if there is a joint liability for debts it does not matter very much to the party furnishing the capital whether he owns it or whether he charges it to the firm. In a case where two partners contributed capital and two partners contributed time it was held that the capital belonged to the firm and that those who contributed time were bound to make good their proportion of the loss. *Whitcomb* v. *Converse,* 119 Massachusetts, 38. Moreover, when James went into the business a thousand dollars belonging to him were deposited in his name undistinguished from the deposits on the business account. The money or a part of it was used to pay liabilities of Henry in connection with the stock in trade. It is true that ultimately more than that sum was used in paying James's outstanding debts, but the mingling of funds tends to show a common interest. The facts that we have mentioned seem to us to constitute some evidence that the relation between the brothers was a partnership by implied understanding until a corporation should be formed. It does not matter that it was not formally recognized or that they may not have used the name to themselves if that is the fair result of what they did understand and intend. We do not say that we necessarily should have come to this conclusion if the case had been tried before us in the first instance, but upon a pure question of fact the error, if there was one, is not so plain as to call upon us to depart from our usual rule.

*Decree affirmed.*