**JARVIS v. HEINER, Collector of Internal Revenue.**

**No. 4227.**

Circuit Court of Appeals, Third Circuit.

March 21, 1930.

George D. Wick and Smith, Shaw, McClay & Seifert, all of Pittsburgh, Pa., for appellant.

Louis Edward Graham, U. S. Atty., of Beaver, Pa., C. M. Charest, Gen. Counsel, E. G. Smith and A. J. Ward, Sp. Attys.,

362

Bureau of Internal Revenue, all of Washington, D. C., and John A. McCann, of Pittsburgh, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

WOOLLEY, Circuit Judge.

In his income tax return for 1923, John A. Bell, later a bankrupt, made deductions for a loss and a bad debt purporting to have been sustained and suffered in that year, and in his return for 1924 he made a deduction for a loss sustained in that year. The Commissioner of Internal Revenue disallowed all deductions and assessed deficiency taxes against the taxpayer for which the Collector filed preferred claims on behalf of the government against his bankrupt estate. On exceptions they were referred to the referee who, by two reports, made sundry findings. On review the District Court sustained all the claims. Thereupon the trustee for the bankrupt appealed.

The first of these tax questions arose out of a transaction wherein Bell in 1920, acting through M. G. Leslie, a friend, put $200,000 in stock of the Lauraine Magneto Company. The stock was taken in the name of Leslie and pledged as collateral on bank loans for the same amount ostensibly made to him with Bell as guarantor. The Magneto Company went into bankruptcy in 1921 and the final dividend was declared in 1923, paying in all about sixty-six per cent. of the proved debts. Manifestly, Leslie or Bell sustained a loss at some time or other. Bell regarded the loss as his and deducted it in his income tax return for 1923.

The Commissioner disallowed the deduction on the theory that the stock was a gift by Bell to Leslie and therefore the loss was not deductible by the donor. The referee held that the transaction was an investment and that Bell had sustained the loss, but that he sustained it not in 1923, the taxable year of his return, but in 1922 when the Magneto Company's stock became worthless as shown by its proceedings in bankruptcy and therefore the loss was not deductible. On review the learned District Court approved the referee's allowance of the Collector's tax claim but on the theory that the loss was sustained in 1921 because of the adjudication of the Magneto Company in that year.

It is clear from the evidence that the transaction was not a gift to Leslie but an investment by Bell; and that Bell, even though he completed the transaction with money borrowed through the medium of Leslie which he has never repaid, sustained a loss in law. The only remaining question relates to the year in which the loss was sustained, for unless it was sustained during the taxable year 1923 for which the return was made it was not, under section 214 (a) of the Revenue Act of 1918 (40 Stat. 1057), deductible.

In mid-year of 1921 an involuntary petition in bankruptcy was filed against Lauraine Magneto Company, a corporation, and in default of an answer it was, a few days later, adjudged a bankrupt. The learned District Court held that the adjudication in bankruptcy was an adjudication of insolvency and that the taxpayer's loss was sustained when insolvency thus occurred; and, further, that as the adjudication was binding on all the world, a stockholder of the bankrupt corporation, himself becoming bankrupt, could not through his trustee be heard to refute the adjudged fact of insolvency in an unrelated controversy between himself and the government's tax collector.

We find ourselves unable to subscribe to this ruling. We agree, of course, that the adjudication was, for the purpose of administering the debtor's property, conclusive upon all the world. But we are not here administering that debtor's property. And so far as the adjudication declared the status of the debtor as a bankrupt, strangers to the decree may not attack it collaterally. Michaels v. Post, 21 Wall. 398, 428, 22 L. Ed. 520, 526; New Lamp Chimney Co. v. Ansonia B. & C. Co., 91 U. S. 656, 661, 662, 23 L. Ed. 336, 338, 339. Compare Hebert v. Crawford, 228 U. S. 204, 208, 209, 33 S. Ct. 484, 57 L. Ed. 800, 803, 804. "But an adjudication in bankruptcy, like other judgments in rem, is not res judicata as to the facts or as to the subsidiary questions of law on which it is based, except as between parties to the proceeding or privies thereto." Gratiot County State Bank v. Johnson, Trustee, 249 U. S. 246, 39 S. Ct. 263, 63 L. Ed. 587, 588; Manson v. Williams, Trustee, 213 U. S. 453, 29 S. Ct. 519, 53 L. Ed. 869, 872. The nominal parties to a bankruptcy proceeding are the petitioning creditors and the bankrupt himself. By force of the statute (USCA title 11, § 41, subsec. (b) not only the bankrupt but "any creditor" may appear and, thus becoming a party, may by pleading to the petition contest the allegation of insolvency. Of course, the same right extends to privies holding under such parties.

But a stockholder of an alleged bankrupt corporation is neither a party nor a privy to a bankruptcy proceeding. As he has no right to be heard on the issue of insolvency, adjudication of that issue is not binding on him as to the facts on which it is based. This brings us to the time of the Magneto Company's insolvency and, accordingly, to the time of Bell's loss.

The company was adjudged a bankrupt in June, 1921. Appraisements of its personal and real estate were filed in August and November following. They showed that the Magneto Company had more assets than liabilities and, inferentially, that the company was solvent. Bankruptcy Act, section 1 (15), 11 USCA § 1(15). The schedules were filed in February, 1922, showing assets two and one-half times greater than debts. The year in which the claims of creditors were to be filed, thus tentatively establishing the aggregate debts, expired in June, 1922. The claims were not passed upon until April, 1923, when the amount of the debts was finally established. But the assets, real and personal, were sold late in 1921 for sums less by $17,400 than their value as disclosed by the schedules filed in 1922, all of which resulted in a calculation as to solvency which we shall not repeat but from which, when reduced to its minimum, the Collector concedes that Bell might in 1921 have expected to realize $10,000 or $11,000 on his investment of $200,000. On these figures we agree with the referee that, so far as Bell was concerned, the Magneto Company's insolvency first became established and known in 1922 and that his loss occurred in that year, but we do not agree with him in allowing the Collector's tax claim based on those facts and on the Commissioner's disallowance of deduction for the loss in Bell's 1923 return.

While Bell's loss was sustained in 1922 and would ordinarily be deductible only in that taxable year, it happened that in 1922 Bell, who had been dealing heavily in stocks, had sustained a "net loss" as shown in his return. By reason of that fact and by force of the Revenue Act of 1921 (section 204, subsec. (b) he had a right to carry over his 1922 loss and apply it against income of the year 1923. Whether or not Bell knew what he was doing, that is what he did. It follows that on this exception to the general rule the deduction should have been allowed and the Collector's claim against the taxpayer's bankrupt estate based on its disallowance should have been denied.

The second question concerns a deduction of $82,460.35 made by the bankrupt taxpayer in his 1923 return for a bad debt suffered in a stock transaction with William A. Magee, which the Commissioner disallowed. This is a fact question. As no principle of law is involved it will be enough to say that we stand with the referee and trial judge in finding that the debt was not bad in a legal sense and in sustaining the Collector's tax claim against the bankrupt's estate based on the disallowance of the deduction and the consequent determination of an additional tax.

The third question concerns a loss of $531,150.64 sustained by the bankrupt taxpayer in relation to stock of O. A. Kraeer Company, deducted by him in his 1924 return and disallowed by the Commissioner. The District Court approved the disallowance and sustained the Collector's claim against the bankrupt's estate for the additional tax. The Collector confesses error as to this item.

That part of the order of the District Court by which it allowed the Collector's first and third tax claims, based on disallowance of deducted losses in respect to the Lauraine Magneto Company and O. A. Kraeer Company stock transactions, is reversed and that part of the order by which it allowed the Collector's second tax claim based on the disallowance of the deduction of a claimed bad debt owed by William A. Magee is affirmed.