William ALLENDER, Trustee in Bankruptcy of Mayhugh & McReynolds, Inc., a Bankrupt, Plaintiff,

v.

SOUTHEAST TRACTOR & EQUIPMENT COMPANY, Defendant.

Civ. A. No. 2475.

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 12, 1959.

**414**

Parker W. Duncan, Bowling Green, Ky., Thomas W. Steele, of White, Gullett, Phillips & Steele, Nashville, Tenn., for plaintiff.

Andrew Ewing, of Bailey, Ewing, Davies & Bailey, Nashville, Tenn., for defendant.

WILLIAM E. MILLER, District Judge.

This action was brought by the trustee in bankruptcy of Mayhugh & McReynolds, Inc., a bankrupt, to recover of defendant, Southeast Tractor & Equipment Company, the sum of $5,431.79 which defendant received as an alleged voidable preference from the bankrupt on June 22, 1956.

The bankrupt was adjudged such by the United States District Court for the Western District of Kentucky upon an involuntary petition filed in that court on July 31, 1956. The order of adjudication was entered on March 29, 1957, and contained a finding that Mayhugh & McReynolds, Inc., was insolvent on June 22, 1956, the date of the alleged preference.

The bankrupt, Mayhugh & McReynolds, Inc., of Bowling Green, Kentucky, was a dealer in farm equipment, implements, machinery, and parts. It was a dealership in that city for the products of Massey-Harris-Ferguson, Inc. The defendant was a distributor of such products, with its situs at Nashville, Tennessee, its territory including the city and environs of Bowling Green, Kentucky.

On June 5, 1956, defendant's officials went to Bowling Green to discuss with the bankrupt its financial affairs. At that time, the bankrupt's open parts account with defendant was more than thirty days in arrears. During the ensuing eight days, defendant made four credit sales to the bankrupt in the aggregate amount of $670.39 and received from the bankrupt payments on account aggregating $1,668.70, leaving a balance due on the open parts account of $1,000.83. At that time, the bankrupt was also indebted to Massey-Harris-Ferguson, Inc., on certain notes originally held by defendant but by it endorsed with recourse to Massey-Harris-Ferguson, Inc. The approximate balance due on these notes was $4,530.18.

At the conference on June 5, 1956, defendant learned that there was a dispute between the bankrupt and Associates Finance Company, which financed some aspects of the bankrupt's operations, as to whether the bankrupt owned a reserve with the finance company in the amount of $26,000.

On June 21, 1956, at about 11:00 P.M., Mr. Brown L. Ward, Secretary-Treasurer of the bankrupt, telephoned Mr. Martin Robbins, the defendant's sales manager, and informed him that Associates Finance Company was preparing to file an attachment suit against the bankrupt and that he, Mr. Ward, had contacted Massey-Harris-Ferguson, Inc., and had advised them to file an attachment suit of their own before Associates Finance Company could act. Mr. Ward suggested that the bankrupt immediately return to defendant its inventory of parts for credit on the open parts account and the notes held by Massey-Harris-Ferguson, Inc. Mr. Robbins agreed to the return of the inventory. The bankrupt thereupon delivered to defendant the parts and equipment as agreed. The delivery was made in the early hours of the morning of June 22, 1956, and on that date defendant credited the bankrupt's account with $1,000.83 and paid the notes held by Massey-Harris-Ferguson, Inc. Credit memos totaling $5,431.79 evidencing these transactions were executed by defendant and delivered to the bankrupt.

On July 31, 1956, Associates Finance Company filed an involuntary petition in bankruptcy against Mayhugh & McReynolds, Inc., in the United States District Court for the Western District of Kentucky alleging that the return of parts and equipment to defendant on June 22, 1956, was an act of bankruptcy and that Mayhugh & McReynolds, Inc., was insolvent when the parts and equipment were returned. As heretofore stated, the court, by its order of March 29, 1957, found that Mayhugh & McReynolds, Inc., was insolvent on June 22, 1956, and adjudged it a bankrupt.

It is plaintiff's insistence that the return of the parts and equipment to defendant on June 22, 1956, was a voidable preferential transfer under the Bankruptcy Act (11 U.S.C.A. § 96), which provides:

"§ 96. Preferred creditors.

"(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

\* \* \* \* \* \*

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby \* \* \* has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, \* \* \*."

Since the transfer was made to a creditor on account of an antecedent debt and within four months of the filing of the involuntary petition in bankruptcy, there are only two issues before the Court. They are:

1. Was the bankrupt insolvent when the transfer was made on June 22, 1956?

2. Did the defendant or its agents have reasonable cause at that time to believe that the bankrupt was insolvent?

In order to recover, plaintiff must carry the burden of proof on both issues. The rule, which is supported by an abundance of authority, is stated in Collier on Bankruptcy, 14th Edition, as follows:

"Just as the trustee in his suit to recover property preferentially transferred must include allegations, in his statement of claim, of all the elements of the alleged voidable preference, so also must the trustee introduce evidence at the trial to sustain all such averments that have not been admitted. The law places upon the trustee (or receiver) the unmistakable burden of proving by a fair preponderance of all the evidence every essential, controverted element resulting in the composite voidable preference. A presumption arises that payments made by the bankrupt to creditors are valid and the trustee seeking to recover such payments must overcome this presumption by adequate proof of a voidable preference. \* \* \* As indicated previously, the usual rules of evidence prevailing in the forum will be applied." (Sec. 60.62, pp. 1043–1048.)

As evidence of the bankrupt's insolvency at the time of the transfer, plaintiff has introduced a certified copy of the order of the United States District Court for the Western District of Kentucky entered March 29, 1957, and the deposition of Harry C. Peart, Jr., a Certified Public Accountant engaged by Associates Finance Company to examine the bankrupt's books and records after the involuntary petition was filed. Defendant objects to this evidence on the ground (1) that the order of the District Court

for the Western District of Kentucky is not admissible to prove the fact that the bankrupt was insolvent at the time of the transfer, and (2) that the testimony of the witness Peart is founded upon hearsay. Upon consideration, the Court is of the opinion that defendant's objection is well taken and that the evidence should be excluded.

 Apparently, the Supreme Court has not passed upon the question of the admissibility of an adjudication in bankruptcy as evidence of insolvency in a proceeding to avoid a preferential transfer.[1] However, it is well settled that an adjudication in bankruptcy, like other judgments in rem, is res judicata only insofar as it declares the status of the debtor as a bankrupt, and it is not conclusive as to facts or subsidiary questions of law upon which it is based, except as between the parties to the proceeding. Tilt v. Kelsey, 207 U.S. 43, 51, 28 S.Ct. 1, 52 L.Ed. 95; Manson v. Williams, 213 U.S. 453, 455, 29 S.Ct. 519, 53 L.Ed. 869; Jarvis v. Heiner, 3 Cir., 39 F.2d 361; Gratiot County State Bank v. Johnson, Trustee, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587.

In Jarvis v. Heiner, supra, 39 F.2d at page 362, the issue was the date on which the taxpayer, a stockholder in a bankrupt corporation, sustained a loss. The Court stated:

"The learned District Court held that the adjudication in bankruptcy was an adjudication of insolvency and that the taxpayer's loss was sustained when insolvency thus occurred; and, further, that as the adjudication was binding on all the world, a stockholder of the bankrupt corporation * * * could not * * * be heard to refute the adjudged fact of insolvency in an un-

related controversy between himself and the government's tax collector.

"We find ourselves unable to subscribe to this ruling. We agree, of course, that the adjudication was, for the purpose of administering the debtor's property, conclusive upon all the world. But we are not here administering that debtor's property. And so far as the adjudication declared the status of the debtor as a bankrupt, strangers to the decree may not attack it collaterally. * * * 'But an adjudication in bankruptcy, like other judgments in rem, is not res judicata as to the facts or as to the subsidiary questions of law on which it is based, except as between parties to the proceeding or privies thereto.'" Citing Gratiot County State Bank v. Johnson, supra.

The facts and the questions of law before the Supreme Court in Gratiot County State Bank v. Johnson, supra, 249 U.S. at page 248, 39 S.Ct. at page 263, were similar to those in the present case. The trustee in bankruptcy sought to recover, as illegal preferences, payments made to the bank within four months of the filing of an involuntary petition. To establish the fact that the bankrupt was insolvent when the payments to the bank were made, the trustee offered in evidence the adjudication together with the involuntary petition upon which it was based and the special master's report which it confirmed. The latter had found that the debtor had been insolvent for four months or more before the filing of the petition and had made, while so insolvent, certain preferences. The trial court held that this evidence was not only admissible but established conclusively that the bankrupt was insolvent throughout the four months. After reviewing

---

1. In 6 Am.Jur. (Rev.Ed.), Bankruptcy, Sec. 277, n. 2, it is stated:

"Although the Supreme Court has directly held that the adjudication of bankruptcy is not res judicata on the question of insolvency where no participation in the actual litigation has occurred, it has

so far expressly stated that it has not passed upon the question of the mere admissibility of the record of the adjudication as a piece of evidence tending to prove insolvency. Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587."

the proceedings in the lower courts, the Supreme Court said:

"First. The trustee contends that adjudication in bankruptcy, being in the nature of a judgment in rem, establishes not only the status of the debtor as a bankrupt, but also the essential findings of fact on which that judgment was based. The adjudication is, for the purpose of administering the debtor's property, that is, in its legislative effect, conclusive upon all the world. * * * So far as it declares the status of the debtor, even strangers to the decree may not attack it collaterally. * * * But an adjudication in bankruptcy, like other judgments in rem, is not res judicata as to the facts or as to the subsidiary questions of law on which it is based, except as between parties to the proceeding or privies thereto. * * *

"Second. The trustee contends, however, that since by sections 18b and 59f of the Bankruptcy Act, any creditor is entitled to intervene in the bankruptcy proceedings, the bank should be considered a party thereto. These sections are permissive, not mandatory. They give to a creditor, who fears that he will be prejudiced by an adjudication of bankruptcy, the right to contest the petition. Whether he does so or not, he will be bound, like the rest of the world, by the judgment, so far as it is strictly an adjudication of bankruptcy. But he is under no obligation to intervene, and the existence of the right is not equivalent to actual intervention. Unless he exercises the right to become a party, he remains a stranger to the litigation and, as such, unaffected by the decision of even essential subsidiary issues. * * *

" * * * The Supreme Court of Michigan [Johnson v. Gratiot County State Bank, 193 Mich. 452, 160 N.W. 544], erred in holding that the adjudication in bankruptcy established conclusively as against the bank that the debtor was insolvent at the time the payments were made. We have no occasion to consider whether the record introduced was admissible merely as evidence of insolvency."

While the Supreme Court thus specifically held that an adjudication in bankruptcy is not conclusive as to the bankrupt's insolvency when the issue arises in an action by the trustee to avoid a preference, it pretermitted the question as to whether the record of the adjudication is admissible as evidence of insolvency. It appears to the Court, however, that the reasons which argue against treating the adjudication res judicata equally support the proposition that it should not be admissible as evidence. In Gratiot County State Bank v. Johnson, supra, 249 U.S. at page 249, 39 S.Ct. at page 264, the Supreme Court used the following language:

"Unless he [a creditor] exercises the right to become a party, he remains a stranger to the litigation and, as such, *unaffected by the decision of even essential* subsidiary issues."

The better view would appear to be that since persons who are not parties to the bankruptcy proceeding are not affected by the decision of subsidiary issues, the record of the bankruptcy proceeding should not be admissible against such persons where the same issues arise in a separate and independent proceeding. The Court, therefore, holds that the copy of the order of the District Court for the Western District of Kentucky is not admissible as evidence in this case.

■■ The testimony of the witness Harry C. Peart, Jr., is also objectionable. This witness testified that in his opinion the bankrupt was insolvent on June 22, 1956. His opinion, however, was formed without the benefit of factual data that would have been indispensable in determining whether the bankrupt was solvent or insolvent.

Among the principal assets of the bankrupt's estate were inventories of

used and new equipment which constituted a part of the bankrupt's stock in trade. The witness valued the bankrupt's equity in the used equipment at $17,325. In arriving at this figure, he accepted and relied upon an appraisal which was made by other persons approximately three and one-half months after June 22, 1956. The witness does not know, and there is no evidence to show, whether the used equipment so appraised included all of the used equipment that the bankrupt owned on June 22, 1956. He had no information and no opinion as to whether this equipment had been exposed to the elements and had deteriorated in value before the appraisal. In short, he had no information as to whether the appraisal reflected the value of the used equipment on the date of June 22, 1956. Under such circumstances, an appraisal made several months after the date of the alleged preference may not be used as evidence of insolvency in an action by the trustee to recover the alleged preference. Rosenman v. Coppard, 5 Cir., 228 F. 114. The new equipment, which the witness valued at $17,231.19, was neither inventoried nor appraised. In the absence of such an inventory, the witness "attempted to reconstruct the new equipment inventory from any available data". (Ex. 1 to Dep. of Harry C. Peart, Jr.) Thus, concerning the value of the bankrupt's assets on June 22, 1956, the opinion of the witness is obviously founded upon hearsay, speculation, and conjecture.

The question here is whether the bankrupt was insolvent on June 22, 1956. Under the Bankruptcy Act, a person is insolvent whenever the aggregate of his property is not, at a fair valuation, sufficient in amount to pay his debts. 11 U.S. C.A. § 1(19). The witness is not qualified to express an opinion as to the solvency or insolvency of the bankrupt on June 22, 1956, unless he has some knowledge of, or some factual data indicating, the fair value of the new and used equipment that the bankrupt owned on that date. This is particularly true since he found at the conclusion of his examination that the bankrupt's admitted liabilities exceeded its admitted assets by only $3,909.90. He clearly does not have such knowledge or factual data, and there is no other evidence before the Court to supply this information. In the absence of such evidence in this respect, the opinion of the witness Peart is wholly without value. His testimony must, therefore, be excluded.

 The plaintiff has failed to show by a preponderance of the evidence that the bankrupt was insolvent at the time of the alleged preference. It is not necessary to consider whether the defendant had reasonable cause to believe that the bankrupt was insolvent at that time.

A judgment for defendant will be submitted for the Court's approval.