[redacted]

## HATCH et al. v. UNITED STATES.

District Court, N. D. New York. November 7, 1928.

[redacted]

Louis W. Severy, of New York City, for plaintiffs.

Robert H. Wilson, of Brooklyn, N. Y., for executor and trustee under the will of Lyle P. Hatch.

Oliver D. Burden, U. S. Atty., and B. Fitch Tompkins, Asst. U. S. Atty., both of Syracuse, N. Y.

Randolph C. Shaw, of Washington, D. C., for Veterans' Bureau.

COOPER, District Judge. This is an action in equity, brought by plaintiffs pursuant to section 2, Act of Congress of March 4, 1925, c. 553 (43 Stat. 1302; 38 USCA § 445), by which plaintiffs seek to have the government resume payments of the awards made under the war risk insurance certificate issued on the life of Lyle Payson Hatch, a deceased soldier. A jury trial was waived. Most of the facts are stipulated between the parties. The stipulated facts are as follows:

(1) That on or about the 18th day of May, 1918, Lyle Payson Hatch, at the age of

31 years, enlisted in the army of the United States at Newark, N. J., and that he gave the name of Mrs. Marion A. Doremus, residing at said address, as the person to be notified in the event of his illness or death.

(2) That on or about the 20th day of May, 1918, said Lyle Payson Hatch applied for and was granted war risk insurance in the sum of $10,000 under and pursuant to the Act of Congress approved October 6, 1917, 40 Stat. 398, and that the defendant thereupon issued its certificate No. 2208498, which, at the direction of said Lyle Payson Hatch, was mailed to said Marion A. Doremus at her address, above stated, and which certificate reads as follows:

"The United States of America, Treasury Department,

"Bureau of War Risk Insurance, Washington, D. C.

"Certificate No. 2208498.

"Date insurance effective: May 20, 1918.

"This certifies that Lyle Payson Hatch has applied for insurance in the amount of $10,000, payable in case of death or total permanent disability in monthly installments of $57.50.

"Subject to the payment of the premiums required, this insurance is granted under the authority of an act amending 'An act entitled "An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department" approved October 6, 1917,' and subject in all respects to the provisions of such act, of any amendments thereto, and of all regulations thereunder, now in force and hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the act, shall constitute the contract.

[Seal.] Wm. G. McAdoo,
"Secretary of the Treasury.

"Wm. C. DeLancy, Director of the Bureau of War Risk Insurance.

"Countersigned at Washington, D. C.,
"M. R. Jordan, Registrar."

(3) That said insured, while a private in Company A, 304th Battalion Tank Corps, died in line of duty in the service at Camp Colt, Gettysburg, Pa., on the 12th day of October, 1918, without having designated any beneficiary of said insurance during his lifetime.

(4) That said insured had duly paid all the war premiums accruing upon said insurance, and that the latter was in full force and effect at the time of his death as aforesaid.

(5) That section 402 of the War Risk Insurance Act of October 6, 1917, as amended by the Act of June 25, 1918 (40 Stat. 609, 615), in effect at the time of the death of said insured as aforesaid, provided, in part, as follows:

"The insurance shall be payable only to a spouse, child, grandchild, parent, brother, or sister, and also during total and permanent disability to the insured person, or to any or all of them. The insurance shall be payable in two hundred and forty equal monthly installments. * * * If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons within the permitted class of beneficiaries as would under the laws of the state of the residence of the insured be entitled to his personal property in case of intestacy."

(6) That said insured left no wife, child, grandchild, or sister him surviving, but that he did leave the following parents and brothers, who were the only survivors within the class specified in section 402 of the War Risk Insurance Act, quoted in the last preceding paragraph, to wit:

| Name. | Relationship. |
|---|---|
| Edward Hatch, | Father. |
| Jessie B. Hatch, | Mother. |
| Boyd Hatch, | Brother. |
| Livingston Hatch, | Brother. |
| Van Note Hatch, | Brother. |

(7) That the statute of the state of New Jersey entitled "An act respecting the orphans' court and relating to the powers and duties of the ordinary, and the orphans' courts and surrogates (Revision 1898), approved June 14th, one thousand eight hundred and ninety-eight," as amended by chapter 63 of the Laws of 1918, which was in effect at the time of the death of said insured as aforesaid, provided, in part, as follows:

"The whole surplusage of the goods, chattels and personal estate of which any person shall die intestate shall be distributed in manner following, that is to say: * * * If there be no husband or widow, as the case may be, then all of the said estate to be distributed equally to and among the children; and in case there be no child, nor any legal representative of any child, then equally among the parents and brothers and sisters, and the representatives of deceased brothers

and sisters: Provided, that no representation shall be admitted among collaterals after deceased brothers' and sisters' children."

(8) That subsequent to the death of said insured, and under and in pursuance of the provisions of law hereinbefore quoted in subdivisions 5 and 7, an application was made on behalf of the persons mentioned in subdivision 6 hereof for the benefits of said insurance, and the Director of War Risk Insurance, having found New Jersey to be the state of the residence of said insured at the time of his death, thereupon awarded said insurance to Edward Hatch, his father, and to Boyd Hatch, Livingston Hatch, and Van Note Hatch, his brothers, payable to each of them in monthly installments of $14.37+, making no provision whatsoever for Jessie B. Hatch, mother of said insured, who was entitled to share equally with father and brothers, and whose existence was then known to the director.

(9) That in or about the month of November, 1925, and without any protest or claim having been made by or on behalf of said Jessie B. Hatch, the Director of the United States Veterans' Bureau terminated all payments under said award, on the ground that the Bureau had erred by not awarding to said Jessie B. Hatch, the mother of the insured, her share of the insurance, and that the plaintiffs, Edward Hatch, Boyd Hatch, Livingston Hatch, and Van Note Hatch, were notified of such termination by letter dated on or about the 4th day of November, 1925.

(10) That on or about the 1st day of March, 1918, and prior to his entry into the military service of the United States as aforesaid, the insured made and executed his last will and testament, which will was thereafter admitted to probate as a will of real and personal property by the Surrogate's Court of the county of Essex, state of New York, on or about the 24th day of May, 1919; that said will gave the entire estate to the nephews, Livingston Hatch and Payson Hatch, in trust until the 21st birthday of Payson Hatch, when the estate was to be divided equally between them. In the event of the death of both the said Livingston Hatch, Jr., and Payson Hatch, before the date fixed for the distribution of the principal of said trust, the estate passed to the International Committee of the Young Men's Christian Association.

(11) That a copy of said will was furnished to said bureau by the plaintiffs in or about the month of December, 1925, and that

said bureau advised plaintiff's counsel, by letter dated May 10, 1926, as follows:

"Responding to your letter of April 27, 1926, please be informed that it has been decided that the nephews designated in the will of the above captioned deceased ex-service man, Livingston Hatch, Jr., and Payson Hatch, are entitled to the insurance in this case."

(12) That the aforesaid ruling was subsequently reversed by the general counsel for said bureau, acting for and in behalf of the director thereof, in a letter to plaintiffs' counsel under date of June 28, 1926.

(13) That the general counsel of said bureau thereafter wrote a letter to plaintiff's counsel, dated July 10, 1926, reading in part as follows:

"A release from the mother of her right would be of material assistance, and while the method of reawarding the insurance is still undecided, if you will cooperate to the extent of securing the release and consent from the mother, it will serve to expedite the final settlement of the claim."

(14) That pursuant to the letter quoted in the last preceding paragraph the plaintiff Jessie Boyd Hatch thereafter executed and delivered to said bureau a written release of her right to share in the installments of said insurance theretofore actually paid to the plaintiffs Edward Hatch, Boyd Hatch, Livingston Hatch, and Van Note Hatch, together with a written consent that all installments of such insurance then due or thereafter to become due be legally divided between and paid to the plaintiffs herein.

(15) That said bureau received and retained said release and consent without objection, and that it still retains the same.

(16) That by letter dated September 14, 1926, said bureau advised plaintiffs' counsel that a final decision had been made to the effect that the commuted value of the balance of the insurance was payable to the executor of the estate of the insured.

(17) That nephews are not within the permitted class of beneficiaries specified in the War Risk Insurance Act of October 6, 1917, as amended by the Act of June 25, 1918, but that subsequent to the death of said insured they were brought within such permitted class by the Act of December 24, 1919 (41 Stat. 371).

The following questions of fact were not agreed upon, and by the stipulation are presented for decision by the court upon the evidence.

(1) Whether any of the plaintiffs were residents of the Northern district of New York at the time this action was commenced.

(2) Whether Lyle Payson Hatch was a resident of New Jersey or New York at the time of his death.

Questions of law to be decided by the court were stipulated to include the following:

(1) Whether the last will and testament of said Lyle Payson Hatch, in the absence of a designation by him during his lifetime, constitutes a designation of a beneficiary or beneficiaries of the insurance moneys payable under the certificate in question.

(2) Whether the executor and trustee named in the last will and testament of said Lyle Payson Hatch is a proper and necessary party to this action, and whether he should not be a party thereto.

(3) Whether the two beneficiaries under the trust created by the will of said Lyle Payson Hatch, deceased, disposing of the residue of his estate, are entitled to any of the insurance moneys payable under the certificate in question, and are necessary or proper parties to this action.

(4) Whether the executor of the will of said Lyle Payson Hatch, deceased, is entitled to take and receive the moneys payable on said certificates of insurance, and give sufficient receipt and acquittance to the United States for such moneys payable under such certificate.

The disputed questions of fact will first be taken up. No question was made upon the trial that the plaintiffs were residents of the Northern district of New York at the commencement of this action.

■■■■ The chief question of fact litigated was the residence of the deceased, Lyle Payson Hatch, at the time of his death. All the evidence, excepting the proceedings for the probate of the will, tends to show that, while the deceased, an unmarried man, had been a resident of the county of Essex in the state of New York up to a month or two before his enlisting in the military service of the United States, he abandoned his residence in that county, sold practically all of his personal property, and said good bye to all his friends and relatives, and went to Newark, N. J., the home of his aunt, at whose home he was a frequent and always a welcome visitor; that it was his intention to, and he did thereafter, make his aunt's residence his residence and domicile; that when he enlisted in the army, and made his application for insurance, he gave the aunt's residence as his residence. The only evidence to the contrary

is the fact that, after the death of Lyle Payson Hatch, his will was probated in the county of Essex, in the state of New York.

The only one of the plaintiffs upon whom citation was served was his father, Edward Hatch. It appeared from the testimony in this case that the deceased had a small amount of personal property remaining in the county of Essex, and some real property also. Residence of the deceased is not the only ground of jurisdiction for the probate of a will, but a will of a nonresident may be probated, if there is real or personal property of the deceased in the county of probate, as there was in this case. Probate of the will, therefore, is not conclusive as to the father, nor is it, of course, binding as against the other plaintiffs, as they were not parties to the proceeding in any way. Tilt v. Kelsey, 207 U. S. 43, 28 S. Ct. 1, 52 L. Ed. 95.

■■■ The court finds that the deceased was a resident of New Jersey, and not of New York, at the time of his death.

■■■ The first question of law to be decided is whether the will of the deceased soldier, in the absence of a designation by him in his lifetime, constitutes a designation of a beneficiary or beneficiaries of the insurance moneys payable under the certificate in question. It appears that on May 10, 1926, the World War Veterans' Bureau decided that the two nephews named in the will were designated and entitled to the insurance in this case. On June 28, 1926, the same bureau reversed itself, and notified the attorneys for the plaintiff to disregard the decision of May 10th, and said:

"Such designation of the beneficiary must be of specific nature, and it must be clearly shown that the soldier intended the last will and testament to operate as a designation of beneficiary. I find nothing to indicate such intention on the part of the soldier, and the fact that his will was made on March 1, 1918, more than three months before the date of this application for insurance, and even before his entry into the military service, is important as underlying my conclusion above stated. The bureau's original decision in this case to the effect that no beneficiary was named by the soldier there in his lifetime by his last will and testament is adhered to."

The court will adopt this final decision of the bureau in this respect and so hold.

Coming to the other stipulated questions of law to be decided, the last one, numbered 4, will be considered next, for upon the de-

cision of that question largely hangs the decision of the remaining questions of law. This fourth question of law is whether the executor of the will of the deceased soldier is entitled to the insurance moneys under section 303 of the World War Veterans Act of June 7, 1924 (43 Stat. 625), as amended by the Act of March 4, 1925 (43 Stat. 1310), or the heirs at law of the deceased under the laws of New Jersey are entitled to payment of the remainder of the monthly allotments.

For brevity, the War Risk Insurance Act will sometimes be referred to as the former act and the World War Veterans' Act as the present law. The former act was repealed by the present law (Act June 7, 1924), and section 303 of the present law was amended by the Act of March 4, 1925 (38 USCA § 514). Section 303, as thus amended, is as follows:

"Section 303. If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured, or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award:

"Provided, that all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this act shall continue until the death of the person receiving such payments, or until he forfeits same under the provisions of this act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance so awarded to such person:

"Provided further, that no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment:

"Provided further, that in cases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917."

The defendant asserts that, because the error in the award made by the bureau in 1919, and in the payments made thereunder until November 1, 1925, was not discovered until after March 4, 1925, viz. November, 1923, the award and payments were not correctly made, and therefore were not in course of payment on March 4, 1925, within the meaning of the first proviso added to section 303 by amendment on the last-mentioned date. The case must therefore, defendant contends, be decided under the provisions of section 303 preceding the first proviso, as if the insured had died since the enactment of the section, and that, under such provisions, there being no beneficiary designated by the insured, the balance of the insurance must be paid to the estate of the insured.

The plaintiffs contend that these awards were in course of payment on March 4, 1925, within the meaning of the first proviso of section 303, and that plaintiffs are entitled to a resumption of payment of the awards. Both parties seem to construe the first proviso of section 303 as amended, as if it were a statement of an exception, taking cases coming within such exception from the operation of the section. The defendant does not in its brief call this proviso an exception in so many words, but it treats it as such and sets up in the brief a request by the bureau to the Comptroller General for advice as to the construction of section 303, in which request these words are used:

" * * * It might be held that the award was in course of payment in March, 1925, and therefore within the *exception* contained in section 303 of the World War Veterans' Act."

Both parties seem to assume the first proviso of section 303 to mean in substance: "Provided that no awards of insurance which were in course of payment on March 4, 1925, shall be affected by the foregoing provisions of this section." Without now deciding that such is the proper construction of the language of the proviso, but assuming it for the present, consideration will be given to the respective contentions of the parties under such construction.

Awards under the insurance in suit were made and payments begun August 12, 1919, as of October 13, 1918. These payments continued monthly down to November, 1925, when the Director of the United States Veterans' Bureau terminated all payments under the award, on the ground that the bureau had erred in 1919 in not awarding to Jessie B. Hatch, the mother, her share of the insurance money, and so notified plaintiffs.

There is, of course, no contention that the awards were not *actually* in course of payment on March 4, 1925. But the essence of the argument of government's counsel is that, when Congress, in changing the law by the amendment of said section 303 in 1925, provided that the section should not apply to *awards in course of payment*, it meant *in course of legal payment*, and that therefore awards not in course of what the defendant calls *legal* payments were not within the terms of the proviso. This seems without support in reason or judicial authority. Public officers are presumed to do their duty. Congress cannot be said to have contemplated that there would be such a thing as failure of public officers to do their duty, resulting in illegal payments, unless such contemplation is clearly shown in the statute. It does not appear anywhere that, prior to March 4, 1925, there were any illegal awards other than this single one in the case at bar, and the illegality of this award was not known to the department, much less to Congress, until eight months after the passage of the amendatory Act of March 4, 1925.

The language chosen by Congress was terse and clear. Congress could have said, but did not say, "in course of *due* payment." or "in *due* course of payment," and did not use any other words of limitation or qualification. It merely used the words "in course of payment," and these words must be taken at their natural and normal meaning, viz. cases in which awards were *actually* being paid, without reference to any potential or possible discovery, at a later date, that the government had made some kind of error in its award of years before.

There is not a single word in the section, nor inference to be drawn from any one or more words in the section, and no statement in any report of any committee or elsewhere, which suggests that, when Congress used the words "in course of payment," it had in mind, or intended, not to include awards then actually being paid monthly, but which might, months or years afterwards, be discovered to have been incorrectly made years before by the department, without fault of the persons entitled thereto, and with full knowledge at all times by the department. Assuming, therefore, that the first proviso is an exception to the preceding provisions of the section, it is held that the awards in the case at bar were in course of payment on March 4, 1925.

But the first proviso of section 303 cannot fairly be construed as an exception or an exclusion, taking certain cases or conditions from the operation of the section. Provisos stating exceptions are almost always in negative form. The second proviso in the same section 303, as amended, is an illustration. "Provided further, that no award * * * made to the estate of a last surviving beneficiary prior to March 4, 1925, shall be affected by the foregoing provisions." See, also, section 602 of the present law (43 Stat. 630), hereinafter stated. Examples of exceptions in negative form might be multiplied.

As originally enacted on June 7, 1924, section 303 merely provided that, if no person within the permitted class of beneficiaries survived the insured, or if before the completion of payments the beneficiary or beneficiaries should die, there being no surviving person within said permitted class, then the insurance, or the remainder thereof, should be paid to the estate of the insured in a lump sum. This covered a very limited field, being confined to cases where there were no persons within the permitted class who survived the insured in the one case, or who survived the beneficiary in the other case.

The department had found the long-continued monthly payments burdensome, and sought to have it changed to a lump sum liquidation plan. Congress by the amendment of March 4, 1925, expanded the field covered by section 303 to include additional cases. As thus amended, section 303, in the provision prior to the proviso, was made to cover the following cases of award and payment of insurance to deceased soldiers: (1) Where no person is designated as *beneficiary*. (2) Where the designated *beneficiary* does not survive the insured. (3) Where the designated beneficiary survives the insured, but dies before receiving all of the 240 installments.

In all such cases, the amended section provides that the payment of the insurance, or the remainder thereof, should be made in a lump sum to the estate of the insured, regardless of whether or not there are survivors within the permitted class, and not as under section 402 of the former act, to the heirs of the insured in monthly payments for 20 years.

Two of these provisions (1 and 2) relate to deaths of insured soldiers occurring after the passage of the amending act. The third (3) relates to deaths of designated beneficiaries occurring after the passage of the act. They are comprehensive, and relate to all policies where either the insured or the designated beneficiary is still living. They are, of course, prospective in this re-

spect. The retroactive effect of the final words of the section will be referred to later herein.

■ Following these three provisions come the words of the first proviso, prescribing that all awards which were in course of payment on March 4, 1925, should continue until (a) the death of the *person receiving such payments* before receipt of all of the 240 monthly installment payments; (b) the forfeiture by the *person receiving such payments* of his rights to such payments before the receipt of all of the 240 monthly payments.

In both of such cases the remainder of the insurance is to be paid in a lump sum to the estate of the insured (regardless of whether or not there are survivors within the permitted class), in the same manner as in cases of subsequent death of the insured or of the beneficiary, specified in the foregoing provisions of the sections herein called 1, 2, and 3.

It is significant that, in each of the foregoing three provisions of the section before the proviso, enumerated above as 1, 2, and 3, the word "beneficiary" was used exclusively; but, when we come to what has been called herein (a) and (b) of the first proviso, that word is no longer used. In place thereof the words used are "persons receiving such payments."

It is not only reasonable, but necessary, therefore, to assume that, since these words are used, instead of the word "Beneficiary," they are used in a broader and different sense then "beneficiary," and were intended to cover cases where the insured had died before the passage of the act without designating a beneficiary, or where both the insured and the beneficiary died before the passage of this act, and awards had been made to the heirs of the insured, and payments were in progress, on March 4, 1925, the date the amendment became effective. In this view, the proviso relates to the death or forfeiture, *after* the passage of the act, of the person receiving the monthly payments, and covers cases not covered by the three preceding provisions of the section, and is prospective. That this is the correct view seems to be clear from the second sentence of the proviso in question:

"When any person to whom such insurance was awarded prior to such date, dies or forfeits his rights to such insurance, *then* there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance so awarded to such person." 38 USCA § 514.

Some language had to be used to cover outstanding cases intended to be included within the proviso. Some other words might have been chosen, such as "in case the insured has died and monthly payments of awards of insurance to persons entitled thereto had begun prior to March 4, 1925, such payments shall continue etc." But Congress chose the shorter, and perhaps broader, phrase, "awards which were in course of payment."

Instead, then, of cases where monthly payments of awards were in progress being exempted from the lump sum liquidation scheme of section 303 by the proviso, that proviso is the sole means of bringing such cases within the lump sum payment scheme of the section. But the proviso, and, of course, the scheme, do not become effective until the death of the person who on March 4, 1925, was living and receiving the monthly payments of the awards.

There was, of course, no intention to discriminate between cases where awards and payments had been correctly made, and those where they had been incorrectly made, if there were known to be any of the latter. They were all to be gathered within the new scheme of lump sum payments, upon the death or forfeiture of the persons then receiving the payments.

It seems clear, then, that under the first proviso of section 303 all awards made under pre-existing law, which were in course of payment on March 4, 1925, were to continue until the *subsequent* death of the person receiving payment of the awards, unless the retroactive words of the section require a contrary interpretation. The retroactive words are, "This section shall be deemed to be in effect as of October 6, 1917." Do these words make the section applicable in all respects, as if it had been enacted on October 6, 1917, before the issuance of any of the war insurance policies by the government?

If so, there was no need at all of the proviso in question. Provisions 1, 2, and 3 of section 303, carried back to the enactment of the original statute, would cover cases where there is no beneficiary, where the beneficiary survives the insured, and where he does not survive the insured. All possible cases are thus covered. To give the proviso any effect at all, it must be deemed to relate to *subsequent* deaths of persons receiving the monthly payments. This necessarily negatives any retroactive effect, as far as cases covered by the proviso are concerned.

■ But let it be assumed that plaintiffs' award does not come within the first proviso

of section 303, because the awards and payments were not correctly and legally made in 1919, and therefore not "in course of payment" on March 4, 1925, within the meaning of the proviso: Even then the defendant cannot prevail, and the payment of the balance cannot pass under the lump sum payment plan to the estate of the insured, except by completely nullifying section 602 of the present law.

Section 602 says that the repeal of the various acts specified in sections 600 and 601, among others the War Risk Insurance Act and its various amendments, including section 402, "shall not affect any act done or any right or liability accrued, or any suit commenced before the said repeal, but all such rights and liabilities under said acts shall continue and may be enforced * * * as if said repeal had not been made."

The retroactive clause of section 303 and section 602 were both incorporated in the present law at the time of its enactment in 1924, and both have since remained unchanged. Like retroactive clauses appeared in various amendments to the former law, but not until the present law was there any such sweeping exception section as is contained in 602.

There are, and there can be, no rights of any kind to be preserved under section 602, if the three provisions prior to the first proviso, herein called 1, 2, and 3 of section 303, are to be considered as if they had been the sole governing law since October 6, 1917, and as if all cases must come under them as of that date. Under such construction there was no need of a saving section like section 602. Sections 303 and 602 should be construed so as to give effect to each. Since section 602 necessarily implies the existence of rights under the former law, and expressly preserves such rights, the retroactive effect of the quoted words of section 303 cannot cover all rights, and must be limited to things not included in section 602.

▆▆▆ The retroactive words of section 303 undoubtedly cover all policies issued since the enactment of the original law, where the insured was alive when 303 was amended on March 4, 1925, but do not cover the rights of persons within the permitted class where the insured died before the amendment of section 303 became effective on March 4, 1925, without designating a beneficiary, whether or not monthly payments had been made to his heirs before the passage of the amendment.

Nowhere in its construction of section 303 by the department, nor in the brief, does defendant's counsel refer to section 602. That section seems to be treated as if nonexistent. In its decision of June 29, 1926, the department said: "When this discovery [omission of mother from the monthly payments] was made, section 303 had been enacted * * * and there is no authority of law * * * except section 303."

In the brief, defendant's counsel says: "The foregoing [section 303] being the only governing statute, * * * the present value of the insurance was payable to the estate of the insured under section 303."

Such statements could only be made upon the theory that section 602 is utterly without effect here, and not even worthy of mention. Even if plaintiffs' award was not in course of payment, and the case is thus without the first proviso, plaintiffs' rights are still saved if section 602 applies. If section 602 is effective in the instant case, defendant is clearly in error. No reason or argument, compelling or other, has been advanced to show that section 602 is without force or validity, or is entirely superseded by or inconsistent with the retroactive phrase of section 303. [12] It is true that there are no vested rights running to the beneficiary or persons in the permitted class, as was held in White v. U. S., 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530. But there are rights arising under section 402 of the former statute, running to such persons, which under section 602 it is the duty of the court to protect, unless it is clear that Congress has legislated to affect those rights. Congress may, doubtless, limit and alter, and possibly destroy, such rights. But Congress may also preserve and secure them. This latter Congress did, as to some rights, by the proviso of the section 303, and as to all existing rights by section 602, of the present law.

There is nothing in White v. U. S., 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530, to the contrary. That was a case where the soldier was held to have designated both mother and aunt; but, the aunt not being within the permitted class, payment was made to the mother alone. Subsequently section 402 of the former law was changed to include aunts, nephews, and nieces, etc., in the permitted class. The amendment of section 402 also provided that the section as amended should be deemed to be in effect as of October 6, 1917. But it further provided that all awards of insurance previously made should be revised as of the first day of the third calendar month after the passage of the amending act, in accordance with the provision of the amending act.

The Supreme Court held that the mother

had no vested rights, and no rights which Congress could not change. The intent to change the pre-existing status was made clear by the provision, added to section 402, that all awards previously made should be revised to conform to the amended section, and the court so held, affirming the decision of the lower court, dividing the award equally between mother and aunt. Not only is there no provision in the present law that previous awards shall be revised to conform to the new law, but there is apparently for the first time a section (602) in the present law permanently preserving such rights. If Congress had intended to have awards previously made revised to conform to the new law, it would have said so as it did in the 1919 amendment. White v. U. S., supra, has little application here.

█ Defendant's final reliance is the claim that the department has heretofore adopted a construction which defeats the plaintiffs, and that this court should adopt such construction. In the language of the brief the contention is: "The practical construction given to a doubtful statute by the department or officers whose duty it is to carry it into execution is entitled to great weight and will not be disregarded or overturned except for cogent reasons and unless it is clear that such construction is erroneous. Pennoyer v. McConnaughy, 140 U. S. 1, 23, 11 S. Ct. 699, 35 L. Ed. 363; U. S. v. Sweet, 189 U. S. 471, 474, 23 S. Ct. 638, 47 L. Ed. 907; U. S. v. Finnell, 185 U. S. 236, 244, 22 S. Ct. 633, 46 L. Ed. 890.

Twice the defendants' United States Veterans' Bureau has given this section a construction. On August 23, 1926, the bureau was advised and adopted the following construction from the Comptroller General of the United States: "Obviously the principle of the Marshall Case would not be applicable to an invalid award to several distributees based on an error in the distributing of the insurance, either because of a mistake of law or because of the discovery of some relative entitled to *a share, of whom the bureau had no previous knowledge*. In such a case there was in fact no valid award made prior to the passage of the act. Accordingly * * * the award may not be considered in course of payment on March 4, 1925."

On August 20, 1927, a like view was given by the Comptroller General and adopted by the bureau in a case in which, as here, department had full knowledge of the existence of a mother, but ignored her in the distribution.

It may be noted that the construction of August 23, 1926, was less than one month before the decision by the bureau in the case at bar, but that of August 20, 1927, was nearly a year after the commencement of this action, and may have been made, having in mind the instant case. .

None of the authorities cited in the government's brief have any such fragile support for the application of this doctrine as does the instant case. In U. S. v. Finnell, 185 U. S. 236, 22 S. Ct. 633, 46 L. Ed. 890, cited by the defendant in support of its contention, the practice had continued for 40 years. In U. S. v. Johnston, 124 U. S. 236, 8 S. Ct. 446, 31 L. Ed. 389, the construction adopted by the department continued for many years, had long been known to Congress, and was acquiesced in by it, as evidenced by later legislation.

In Pennoyer v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699, 35 L. Ed. 363, the land commissioners of the state of Oregon had followed a certain construction for nine years, upon which plaintiff relied, and which he followed. The court said: "On the faith of a construction thus adopted, rights of property grew up which ought not to be ruthlessly swept aside, unless some great public measure, benefit, or right is involved, or unless the construction itself is manifestly incorrect." The court held that such construction should not be changed, at the instance of the same land commissioners, to defeat plaintiff, who had relied upon such construction.

In U. S. v. Sweet, 189 U. S. 471, 23 S. Ct. 638, 47 L. Ed. 907, the court held that a practice of the department for many years in construing a statute relating to the payment of expenses of discharged soldiers was controlling where the statute was not clear.

On June 28, 1926, the general counsel of the department wrote plaintiff's counsel herein, among other things: "The question of rewarding insurance under circumstances similar to those presented by this case is a difficult one and is receiving careful consideration. Earnest effort is being directed toward arriving at a conclusion which will be both sound and practical and you will be communicated with at an early date concerning this phase of the case and furnished with the Bureau's final decision."

On July 10, 1926, the general counsel of the Veterans' Bureau wrote a letter to the plaintiff, which indicated that the Bureau had not yet reached a decision. Thus it is clear that less than two months before the rejection of plaintiff's claim the department

had no settled practice or construction, and did not know how the law should be construed.

The first construction of the section by the department was in August, 1926. So there is not, and could not be, any such long-continued practice and discussion as in the cases cited. These cases are not, therefore, authority. The bureau has misconstrued the statute and its construction should not be upheld.

In the foregoing nothing has been said about the doctrine of estoppel. Plaintiff claims that the government agency, the Veterans' Bureau, has by its own fault, and without fault of the insured or these plaintiffs, made the erroneous award, and continued it for many years, and should not be estopped, after the law is changed and plaintiffs' rights have changed, from repudiating its own acts to plaintiffs' damage, and from asserting that the awards and payments were illegal, and not in regular course of payment.

Plaintiff asserts that, when the government is not exercising a governmental function, but is entering upon a commercial activity, the government may be estopped, as if it were a private person or corporation engaged in the same activity, and that the doctrine that the government cannot be held to be estopped applies only to the exercise of truly governmental functions. There seems to be some support for this contention, but that question will not be de-

cided, for the decision runs to the plaintiffs on other grounds.

The second question of law, as to whether or not the executor and trustee of the will is a necessary party, depends upon whether or not the plaintiffs are entitled to the insurance moneys under rights given by the former laws, or the estate of the insured is entitled to the money under the present law. In the latter case the executor would, of course, be a proper party. The court having decided that the plaintiffs are entitled to prevail, the executor has no rights, and is not a necessary party.

The third question of law is whether or not the two nephews named in the will are entitled to the insurance money and are necessary parties. The court having decided that the will designates no beneficiary, and that section 303 of the World War Veterans' Act has no present application, these two legatees under the will have no interest in the money, and are not necessary parties to the action.

It is held, therefore, that section 303 has no present application to the insurance in suit, or to these plaintiffs; that in any event the awards were in course of payment, within the meaning of that section; and that, the mother having released the Government and consented thereto, plaintiffs are entitled to the restoration of payments by the government; and judgment may be entered accordingly.

Plaintiffs' counsel is allowed 10 per cent.