## AREHART v. UNITED STATES.
### No. 4008.

District Court, E. D. Illinois.
March 10, 1931.

Kasserman & Kasserman, of Newton, Ill., for complainant.

Albert E. Isley, of Newton, Ill., for intervening petitioners.

Harold G. Baker, U. S. Atty., of East St. Louis, Ill., and John W. Speakman, Asst. U. S. Atty., of Danville, Ill.

LINDLEY, District Judge.

Plaintiff brings this suit to recover upon a war-risk insurance certificate issued to one Ivory Bush, deceased. Defendant moves to dismiss the petition because of the alleged legal insufficiency thereof.

The following material facts are set up in the petition: Ivory Bush, while in the service of the United States Army and while the said insurance certificate was in full force and effect, died intestate on or about October 10, 1918. The beneficiary named in the certificate was James H. Bush, a brother, who died intestate on or about December 10, 1918. Thereafter the government paid to the estate of said James H. Bush that portion of the monthly installments accruing upon said insurance between the date of the death of Ivory Bush and that of James H. Bush. Neither Ivory nor James H. Bush left any surviving wife, child, brother, sister, father, or mother, or descendants thereof. Each left a grandmother, Sarah Jolly, and certain aunts and uncles. Upon the death of James H. Bush, the insurance installments were paid to said Sarah Jolly until her death intestate on December 18, 1920. Thereafter the insurance installments were paid to the seven uncles and aunts then surviving and have been paid thence until the commencement of this suit, except that one of the uncles died on August 12, 1926, and another on March 6, 1928, whereupon the two-sevenths represented by the interests of these two deceased persons was paid upon a computed basis in cash to the respective administrators of their estates. The sole question in issue is whether the remaining five-sevenths, being paid in monthly installments to the surviving uncles and aunts, shall be computed in cash and paid to plaintiff as administrator of the estate of Ivory Bush, deceased.

The insurance certificate recites that the insurance "is granted under the authority of an act * * * approved October 6, 1917, and subject in all respects to the provisions of such act, of any amendments thereto and of all regulations thereunder now in force or hereafter adopted, all of which, together with the application for this insurance and the terms and conditions published under authority of the act, shall constitute the contract." Among other provisions, the application for war-risk insurance provides that: "In case any beneficiary die or become disqualified after becoming entitled to an installment but before receiving all installments, the remaining installments are to be paid to such person or persons within the permitted class of beneficiaries as may be designated in my last will and testament, or in the absence of such will as would, under the laws of my place of residence, be entitled to my personal property in case of intestacy." The regulations of the War Risk Insurance Bureau provide that if any designated beneficiary shall survive the insured, but shall not receive all the installments, then the remaining installments shall be payable to such person or persons within the permitted class of beneficiaries as would under the laws of the insured's place of residence be entitled to his personal property in case of intestacy. Originally under the War Risk Insurance Act (see section 402 [40 Stat. 409]) the only permitted beneficiaries were a spouse, child, grandchild, parent, brother, or sister. This section was amended on December 24, 1919 (41 Stat. 375, § 13), to extend the class of permitted beneficiaries to include uncles, aunts, nephews, nieces, brothers-in-law, and sisters-in-law of the deceased.

Chapter 39 of Cahill's Illinois Statutes 1929, paragraph 1, subdivision 5, provides that, if one die intestate without children, parent, brothers, or sisters, or descendants thereof, and without widow or surviving husband, then the personal property of the deceased shall descend in equal parts to the next of kin of the intestate in equal degree, according to the rules of the civil law. The amendment which enlarged the permitted beneficiaries to include uncles and aunts contained a provision that it should be deemed as in effect as of October 6, 1917.

Under the provisions of the contract contained in the insurance certificate and the application, it will be observed, the contract was subject to be modified and altered by amendments to the War Risk Insurance Act by Congress, and to be governed by such regulations as the Insurance Bureau should issue.

The Supreme Court of the United States in the case of White v. United States, 270 U.

S. 175, 46 S. Ct. 274, 70 L. Ed. 530, has held that the effect of subsequent amendments providing that the same shall be in effect as of 1917 is to amend and modify the contract; that the interest of beneficiaries, heirs at law, and next of kin therein does not become a vested interest as of the date of the death of the insured, but is such an interest as may be divested, transferred, or otherwise disposed of by the government without in any way transgressing the obligations of the insured's certificate. To the same effect is Gregg v. United States, 15 F.(2d) 8 (C. C. A. 7).

Under the civil law, which the Illinois statute above mentioned adopts in determination of who constitutes next of kin, the latter class consists of those who are included within a group within which the intestate is himself the terminus a quo. The several degrees are construed under that rule. The father stands in the first degree, the grandfather and grandson in the second, and in the collateral line the computation is from the intestate up to the ancestors of the intestate and of the person whose relationship is sought to be ascertained, and then down to that person. Accordingly the intestate and his brothers are related in the second degree; the intestate and his uncles and aunts in the third degree. 2 Kent's Commentaries, 539. In other words, a grandparent is related to an intestate in the second degree, while his aunt is related to him in the third degree.

Considering the facts above related and the authorities cited, it is apparent that upon the death of Ivory Bush in 1918, in view of the fact he had designated his brother, James H., his beneficiary, the installments accruing so long as James H. Bush lived were payable to him, and that the interest of James H. Bush was not a vested interest, but was subject to be divested or transferred as Congress and the War Department might direct. Accordingly, upon the death of James H. Bush, in view of the regulations of the War Risk Bureau, the installments thereafter maturing were payable to the grandmother of the deceased, Ivory Bush, she being next of kin under the Illinois statute, and having been designated both by the Insurance Bureau regulations and by the application of the insured as the person to whom, in such situation, the installments should be paid. It is equally obvious that upon her death in 1920, under the same application and regulations, in view of the retroactive amendment increasing the class to whom insurance might be payable, to include uncles and aunts, and in view of the fact that they, upon the death of Sarah Jolly, constituted the next of kin of the insured, the installments thereafter were due and payable to the uncles and aunts and rightfully paid to them. They come within the substituted beneficiaries named in insured's application for insurance, within the provisions of the statute and within the regulations of the Department.

The contention of plaintiff as administrator of the estate of Ivory Bush that upon his appointment, at a comparatively recent date, he became entitled to receive said installments in computed cash, is based upon an amendment of section 303 of the World War Veterans' Act under date of March 4, 1925 (section 14 [38 USCA § 514]), in which it is provided that: "If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award: Provided, That all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this Act shall continue until the death of the person receiving such payments, or until he forfeits same under the provisions of this Act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance so awarded to such person: Provided further, That no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment." This amendment, too, was made retroactive by a provision that it should be deemed in effect as of October 6, 1917, and the plaintiff's basis for the relief prayed for is the provision that, if the designated beneficiary survives the insured, and dies prior to receiving all of the installments, there shall be paid to the estate as beneficiary the present value of the monthly installments thereafter payable. Under this statute the cash value of the unmatured installments is to be ascer-

tained and the amount thereof awarded to the administrator.

Unfortunately for this contention, the amended section contains the provision that all awards of insurance which are in course of payment on the date of the passage of this Act shall continue until the death of the person receiving such payments, or until he forfeits the same under the provisions of this act. This provision is clear, unambiguous, and without exception. It is not provided in the statute that the awards shall have been legal awards, or that the course of payment shall have been legal, or that the awards should be due awards, but the provision is that all awards which are in course of payment on the date of the approval of the act shall continue. The insurance had, prior to the passage of the act, been awarded to the next of kin of the deceased, the uncles and aunts. It was and is being paid in pursuance of such award, and nothing is submitted to the court to remove or modify in any way the full effect of the plain provision quoted.

The same subject-matter was fully considered by Judge Cooper in the case of Hatch v. United States (D. C.) 29 F.(2d) 213. Judge Cooper explained at length the history of the legislation involved, the reason for its enactment, and the full legal effect thereof, as determined by the decisions of the Supreme Court, and reached the sound conclusion that under facts similar to those at bar the awards were in course of payment within the meaning of section 303, as amended, and that there could be no interference therewith by the administrator of the insured.

The court is of the opinion that a correct interpretation of the statutes cited, the regulations issued, and the certificate and application therefor, constituting the contract of the parties, leads to the inevitable conclusion that, in view of the fact that, at the time of the adoption of the amendment to section 303 in 1925, awards had been made to the uncles and aunts, the provision of such act granting to the estate of the insured the right to recover the cash value of the unmatured installments does not apply, and that the plaintiff, therefore, has no cause of action.

Accordingly the motion to dismiss is allowed, and the suit is dismissed, at the cost of the plaintiff, payable in due course of administration. An exception will be preserved to the benefit of the plaintiff.